# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:  WILLARD L. DEERMAN and                          No. 11-09-15348 J
       CHARLOTTE DEERMAN,

       Debtors.

CODY FARMS, INC., individually and
Derivatively as a member of and on behalf
of FALCON FARMS, L.L.C.; ROBERT
L. FLETCHER and MARY K. FLETCHER,
husband and wife,

       Plaintiffs,

v.                                                      Adversary No. 10-1019 J

WILLARD L. DEERMAN and
CHARLOTTE S. DEERMAN,

       Defendants.

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on the Motion for Partial Summary Judgment (sometimes called the "Motion") and supporting memorandum filed by Plaintiffs, Cody Farms, Inc. ("Cody Farms"), individually and derivatively as a member of and on behalf of Falcon Farms, L.L.C. ("Falcon Farms"), Robert L. Fletcher, and Mary K. Fletcher, husband and wife (the Fletchers), by and through their attorneys of record, Jennings, Strouss, & Salmon, P.L.C. (Brian Imbornoni). *See* Docket Nos. 28 and 29. Defendants Willard L. Deerman and Charlotte S. Deerman (together, the Deermans), by and through their attorneys of record, Law Office of George "Dave" Giddens, P.C. (Dean Cross), filed a response in opposition to the Motion and Plaintiffs filed a reply. *See* Docket Nos. 32 and 33. Plaintiffs and Defendants previously entered into a Stipulated Order to Stay Adversary Proceeding and to Compel Arbitration pursuant to which the parties proceeded with an arbitration case captioned *Cody Farms, Inc., et*

*al. v. Willard L. Deerman, et ux.,* American Arbitration Association No. 76 180 & 00397 08 (the "Arbitration Case"). *See* Docket No. 25. The arbitrator in the Arbitration Case (the "Arbitrator") has since entered his Findings of Fact, Conclusions of Law and Interim Award and has entered a Final Arbitration Award ("Arbitration Award") in the Arbitration Case.

Plaintiffs assert that the Court should apply collateral estoppel to the findings made by the Arbitrator and determine that a portion of the award issued by the Arbitrator constitutes a non-dischargeable debt as to the Deermans under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). The Deermans raise essentially two issues in opposition to the Motion: 1) by filing and prosecuting the Motion, the Plaintiffs have violated both the automatic stay and a stay order entered in this adversary proceeding; and 2) because the Deermans still have the right to contest the arbitration award, the award has no preclusive effect and the Motion is pre-mature. For the reasons set forth below, the Court concludes that the filing and prosecution of the Motion violates neither the automatic stay nor the stay order entered in this adversary proceeding, that the Deermans are barred from contesting the Arbitration Award, and that the Arbitrator's findings have collateral estoppel effect. The Court will grant Plaintiff's Motion, provided that the Arbitrator's findings of fact establish all elements necessary to a finding of non-dischargeability of the debt at issue in this adversary proceeding.

BACKGROUND AND PROCEDURAL HISTORY

The Deermans filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 20, 2009 as Case No. 11-09-15348 JA. Pre-petition, Cody Farms filed its arbitration claim against the Deermans. The Deermans filed a response to the arbitration claims on January 12, 2009, including a counterclaim against Cody Farms and a third-party claim against Robert L. Fletcher. Plaintiffs initiated this adversary proceeding by filing a Complaint to Determine Non-

2

Dischargeability of Debt ("Complaint") on February 16, 2010. The Complaint includes individual claims and derivative claims asserted by Cody Farms as a member of Falcon Farms. Plaintiffs did not, however, pursue any derivative claims as part of the Arbitration Case. *See* Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiffs' Supporting Memorandum"), p. 11, n.2 – Docket No. 29, even though the caption in the Arbitration Case reflects Cody Farms both individually and derivatively as a member of and on behalf of Falcon Farms.

Cody Farms and the Fletchers filed a motion for relief from stay in the Deermans' bankruptcy case requesting relief from the automatic stay to allow the movants and the Deermans to proceed with the Arbitration Case. On October 4, 2010, a Stipulated Order to Stay Adversary Proceeding and to Compel Arbitration ("Stipulated Order") was entered in this adversary proceeding. *See* Docket No. 25. The Stipulated Order recited that its purpose is to stay the adversary proceeding to permit the parties to liquidate their claims against each other in the Arbitration Case, and that the Plaintiffs had filed a motion for relief from stay in the Deermans' bankruptcy case to permit the Arbitration Case to proceed. *Id.* The Stipulated Order included the following provisions: 1) this adversary proceeding is stayed pending further order of this Court; 2) the Deermans agree to proceed with arbitration, provided they are given a reasonable opportunity to cure any previous failure to respond to discovery or to otherwise participate in the Arbitration Case; 3) the factual determinations of liability and the amount of debt, if any, owed by either party to the other will be determined in the Arbitration Case; 4) this Court retains exclusive jurisdiction to determine whether any award in the Arbitration Case is non-dischargeable; and 5) either party may request the Court to vacate the Stipulated Order so

that the parties may resume proceedings in this adversary case in the event that the motion for relief from stay in the Deerman's bankruptcy case is denied. *See* Docket No. 25.

On October 26, 2010, the Court entered an Order Granting Motion for Relief from Stay ("Stay Relief Order") in the Deermans' bankruptcy case. *See* Case No. 09-15348 – Docket No. 132. The Stay Relief Order modified the automatic stay provisions of 11 U.S.C. § 362 so that the Plaintiffs and the Deermans could proceed with the Arbitration Case, provided that the Plaintiffs would not attempt to enforce any award entered in the Arbitration Case against the Deermans without further leave of this Court, and provided further that this Court retains exclusive jurisdiction over the dischargeability of any award. *Id.*

The Arbitration Case was conducted in Arizona. The Arbitrator entered Findings of Fact and Conclusions of Law and an Interim Award in the Arbitration Case on February 2, 2012. On March 19, 2012, the Arbitrator entered a Final Arbitration Award (defined above as the "Arbitration Award") in the Arbitration Case. The Arbitration Award has not been confirmed.

In their bankruptcy case, the Deermans filed Debtors' Motion to Extend Time to File Amended Plan and Disclosure Statement ("Motion to Extend"). *See* Bankruptcy Case No. 11-09-15348 J – Docket No. 237. The Motion to Extend includes arguments that echo the Deermans' arguments in opposition to the pending Motion filed in this adversary proceeding: namely, that the Plaintiffs cannot obtain a non-dischargeable judgment without first confirming the Arbitration Award and that the Deermans can challenge the Arbitration Award as part of a proceeding to confirm the Arbitration Award. *See* Motion to Extend - ¶¶ 4, 5,6 - Case No. 11-09-15348 JA – Docket No. 237. At a preliminary hearing on the Motion to Extend, the parties agreed that the Deermans will have thirty days following the Court's ruling on the instant Motion within which to file an amended plan and disclosure statement.

## SUMMARY JUDGMENT STANDARDS

Summary Judgment, governed by Rule 56, Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. , will be granted when the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56(a), Fed.R.Civ.P. In order to defeat a motion for summary judgment, the opposing party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(internal citations omitted). When evaluating a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 1997)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'")(quoting *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793, 796 (10th Cir. 1995)(quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990)(additional internal quotation marks omitted)).

Plaintiffs' statement of facts not in genuine dispute is based on the Findings of Fact and Conclusions of Law, the Interim Award, and the Arbitration Award entered in the Arbitration Case. The Deermans do not dispute that the Arbitrator made such findings and conclusions as part of the Arbitration Case,[1] but nevertheless take issue with several of the Plaintiffs'

---

[1] *See* Response to Motion for Summary Judgment, Memorandum in Support of Response to Motion for Summary Judgment, and Alternatively Motion to Stay Briefing on Motion for Summary Judgment ("Defendants' Response"), p. 3, n. 1 ("Respondents to do not dispute that the Arbitrator made the Findings . . . cited in Petitioners['] Statement of Undisputed Fact.").

undisputed facts.[2]  As determined below, the Deermans are precluded from contesting the Arbitrator's factual findings made in the Arbitration Case.  Consequently, in reviewing Plaintiffs' request for partial summary judgment, the Court will treat the Arbitrator's findings of fact as not subject to genuine dispute and will consider whether those facts entitle Plaintiffs to judgment as a matter of law.

DISCUSSION

A.  <u>Whether the Motion violates the automatic stay or the Stipulated Order entered in this adversary proceeding.</u>

The Deermans assert that the Motion violates the automatic stay imposed by 11 U.S.C. § 362.  This Court disagrees.   The automatic stay imposed by 11 U.S.C. § 362 operates to stay the continuation of an action or proceeding against the debtor "to collect, assess, or recover a claim against the debtor that arose before the commencement" of the debtor's bankruptcy case.  11 U.S.C. §362(a)(6).   Its scope is extremely broad.  *In re Sullivan,* 357 B.R. 847, 853 (Bankr.D.Colo. 2006)(citing *In re Gagliardi,* 290 B.R. 808, 814 (Bankr.D.Colo. 2003)).  However, an action to contest dischargeability of a debt under section 523 of the Bankruptcy Code brought by a creditor against a debtor cannot violate the automatic stay because the automatic stay does not apply to acts taken in a debtor's bankruptcy case brought before the

---

[2]For example, Plaintiffs' Statement of Undisputed Fact No. 24 states that "Beginning in early 2007, Mr. Deerman repeatedly represented to Mr. Fletcher that Falcon's 2006 carryover hay inventory had been sold.  Mr. Fletcher believed Mr. Deerman's statement that Falcon's 2006 carryover hay was sold."  *See* Plaintiffs' Supporting Memorandum, p. 5, ¶ 24 – Docket No. 29.   In response, the Deermans state, in part, that

> Falcon's inventory records reflect that Falcon sold approximately 78.2% of its 2006 horse quality hay inventory from January 2007 through May 2007.  Falcon's hay sales for the first five months of 2007 were from Falcon's 2006 inventory because the hay from 2007 crop year had not come in.   Respondent Deerman told Petitioner Fletcher that the remaining 2006 hay inventory was sold to dairies if Petitioner Robert Fletcher would agree to reduce the price of the damaged 2006 inventory to as low as $100 per ton. Respondent Fletcher repeatedly refused to reduce the 2006 hay inventory prices because the bank would call the note and Falcon would be out of business.

> Deermans' Response, p. 6-7, ¶ 5.

> Based on these additional facts, the Deermans assert that there is a genuine issue of material fact as to whether the 2006 hay inventory had been sold and whether Mr. Fletcher had a legitimate belief that the inventory had been sold or had not been sold.  *Id.*

Bankruptcy Court seeking relief under the Bankruptcy Code. *See Sears, Roebuck & Co. v. Hodges (In re Hodges),* 83 B.R. 25, 26 (Bankr.N.D.Cal. 1988)(observing that "an action taken in the bankruptcy court can only be found to be a violation of the automatic stay when there is no basis under the Code for the action[,]" and concluding that, "[a]s a matter of law . . . a nondischargeability action can never violate the automatic stay."); *Lawson v. Nationsbank Mortg. Corp. (In re Lawson),* 2000 WL 33943198, *6 (Bankr.S.D.Ga. Sept. 22, 2000)("the automatic stay does not apply to actions or claims brought before the bankruptcy court with jurisdiction over the debtor's bankruptcy case.")(citation omitted). *See also, United States v. Inslaw, Inc.,* 932 F.2d 1467, 1474 (D.C. Cir. 1991)("For obvious reasons, however, courts have recognized that § 362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code, such as motions to convert reorganizations to liquidation proceedings").

The Deermans also assert that the Stipulated Order entered in this adversary proceeding precluded the Plaintiffs from filing or prosecuting their Motion. The Stipulated Order provides that this "adversary proceeding is stayed pending further order of this Court." *See* Stipulated Order, p. 2, ¶ 1 – Docket No. 25. But even the Stipulated Order provides that either party may request the Court to vacate the Stipulated Order so the parties may resume proceeding in this adversary proceeding if the Stay Relief Order in the Deermans' bankruptcy case is denied; that any award entered in the Arbitration Case in favor of the Plaintiffs and against the Deermans "shall not be enforceable without further order of this Court[;]" and that this Court retains "exclusive jurisdiction to determine whether any such award is nondischargeable under §523 of the Bankruptcy Code." *Id.* at ¶ 2.

Having proceeded with the Arbitration Case and obtained an arbitration award as contemplated by the Stipulated Order and Stay Relief Order, Plaintiffs have returned to the this

Court as contemplated by the Stipulated Order to request a determination that the debt at issue is

non-dischargeable. The stay imposed by the Stipulated Order was intended to stay this adversary

proceeding until the Arbitrator concluded the Arbitration Case. That has occurred. The Motion

has been fully briefed. It does not make sense to require the movants to refile a motion for

partial summary judgment and supporting papers and the Defendant to refile their response.

Under the circumstances, the Court will vacate the stay imposed by the Stipulated Order nunc

pro tunc as of the date of the filing of the Motion. The filing and prosecution of the Motion,

therefore, does not violate the stay imposed by the Stipulated Order.

B.   Whether the Deermans can contest the arbitration award

Section 9 of the Federal Arbitration Act, 9 U.S.C. §§ 1 – 16 ("FAA"), governs the

procedure for confirming an arbitration award.   That section provides, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered
> upon the award made pursuant to the arbitration, and shall specify the court, then at any
> time within one year after the award is made any party to the arbitration may apply to the
> court so specified for an order confirming the award, and thereupon the court must grant
> such an order unless the award is vacated, modified, or corrected as prescribed in sections
> 10 and 11 of this title. If no court is specified in the agreement of the parties, then such
> application may be made to the United States court in and for the district in within which
> such award was made.

9 U.S.C. § 9.

Sections 10 and 11 of the FAA specify which court may issue an order vacating, modifying or

correcting an arbitration award and set forth the grounds for issuance of such an order.[3]   Section

---

[3] Those sections provide:
   **(a)** In any of the following cases the United States court in and for the district wherein the award was made
may make an order vacating the award upon the application of any party to the arbitration--
      **(1)** where the award was procured by corruption, fraud, or undue means;
      **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
      **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon
sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any
other misbehavior by which the rights of any party have been prejudiced; or
      **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual,
final, and definite award upon the subject matter submitted was not made.

8

12 of the FAA describes how a motion is to be made for an order vacating, modifying or

correcting an arbitration award, and imposes a three-month time limit for serving such a motion.

[4] Here, Plaintiffs have not sought to confirm the Arbitration Award pursuant to Section 9 the

FAA; nor have the Deermans sought to vacate, modify or correct the Arbitration Award within

the three-month period specified in Section 12 of the FAA.

The Deermans cite cases from other jurisdictions which hold that a party can challenge an

arbitration award in defense to an action to confirm an arbitration award. *See, e.g., Chauffeurs,

Teamsters, Warehousemen and Helpers Local Union No. 364 v. Ruan Transport Corp.,* 473

F.Supp. 298, 303 (N.D.Ind. 1979)(holding that Section 12 of the FAA "only limits the time

---

**(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
**(c)** The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 752 of title 5.

      9 U.S.C. §10.

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration--
**(a)** Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
**(b)** Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
**(c)** Where the award is imperfect in matter of form not affecting the merits of the controversy.
The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

      9 U.S.C. § 11.
[4] Section 12 of the FAA provides:

      Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

      9 U.S.C. § 12.

during which the party against whom an arbitrator rules can initiate court action; section 12 does not limit the time during which the defenses enumerated in sections 10 and 11 are available."); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.,* 452 F.Supp. 573, 575 (D. Neb. 1978)(holding "that the time stricture within § 12 is inapplicable when the party who prevails at arbitration moves to confirm the award and the defendant desires to raise objections in response to that motion.").  Those courts reason, in part, that because the language in Section 9 references Sections 10 and 11 of the FAA, but not Section 12 which imposes the three-month limit for seeking to vacate, modify or correct an arbitration award, the time limit in Section 12 does not limit a party's ability to contest the arbitration award in defense of an action to confirm the award.  *See Ruan Transport,* 473 F.Supp. at 302 (pointing out that the reference in Section 9 to "'the next two sections' indicates that the time limitation of section 12, the third following section, was not intended to apply to the defense of a motion to confirm.").   This Court disagrees.

In discerning a statute's meaning, the starting place is the plain meaning of the language itself.  *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(resolving a dispute over the meaning of a statute "begins  . . . with the language of the statute itself.")(citation omitted); *In re Wilbur,* 344 B.R. 650, 653 (Bankr.D.Utah 2006)("Statutory construction begins with the language of the statute itself and an analysis of whether the language is plain.")(citation omitted).  When the meaning of the language is plain, the Court's analysis ends.  *Ron Pair,* 489 U.S. at 241(when the plain meaning of the language is clear, the court's inquiry ends, and "'the sole function of the courts is to enforce it according to its terms.'")(quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

A plain reading of the language in Sections 9 through 12 of the FAA supports the conclusion that a party's failure to act within the three-month limitation period is fatal to such party's ability to vacate, modify, or correct the award under the FAA. There is no need for Section 9 of the FAA to reference Section 12 in order for the time limitation contained in Section 12 to apply to a defense to an application to confirm an award on grounds specified in Sections 10 and 11. Under Section 9, on a timely application the court "must" confirm the award "*unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11* of this title." 9 U.S.C. § 9 (emphasis added). An arbitration award cannot be vacated, modified, or corrected as prescribed in sections 10 and 11 unless a motion is made within the three-month period specified in Section 12. As pointed out by the Seventh Circuit in *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union 135 v. Jefferson Trucking Co., Inc.,* 628 F.2d 1023, 1026 (7th Cir. 1980), Section 9 of the FAA:

> instructs that a court 'must grant' an application for confirmation unless the award is challenged within a three month period following its issuance. . . . . Accordingly, the plain meaning of Section 9 of the statute would seem to bar the defendant from raising a delinquent motion to vacate the award.[5]

Many courts likewise hold that the failure to timely seek to vacate, modify or correct an arbitration award within the time limits contained in Section 12 of the FAA precludes such party from contesting the award. *See, e.g., In re Robinson,* 326 F.3d 767, 771 (6th Cir. 2003)(stating that "arbitration awards under the FAA are binding unless a motion to vacate or modify has been filed in accordance with the terms of that Act" and finding that because the complainant did not avail himself of the review provisions under the FAA and did not make a timely request to

---

[5]As noted by the District Court in *Tokura Construction Co., Ltd. v. Corporacion Raymond, S.A.,* 533 F.Supp. 1274, 1278 (S.D.Tex. 1982), the fact that *Jefferson Trucking* was decided under the Labor Relations Act of 1947, 29 U.S.C. § 185(e), "does not detract from the persuasiveness" on the issue of whether the failure to timely seek to vacate or modify an arbitration award under Section 12 of the FAA precludes a defendant from prosecuting objections to an award even in defense to a motion to confirm the award.

vacate or modify the arbitration award, he was barred from collaterally attacking the award in his bankruptcy proceeding). *See also, Int'l Bhd. of Elec. Workers, Local Union 969 v. Babcock & Wilcox,* 826 F.2d 962, 966 (10th Cir. 1987)(applying Colorado law and recognizing that "courts have uniformly held that a defendant's failure to move to vacate the arbitration award within the prescribed time period precludes it from seeking affirmative relieve in a subsequent action to enforce the award.")(citing *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir. 1986); *Florasynth , Inc. v. Pickholz,* 750 F.2d 171, 175 (2nd Cir. 1984)(holding that the defendant's failure to seek to vacate an arbitration award within the three month time limit under the FAA precluded the defendant from later seeking to vacate the award in defense of a motion to confirm the award); *Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County v. Celotex Corp.,* 708 F.2d 488, 490 (9th Cir. 1983)("a party's failure to petition to vacate an unfavorable award within the applicable statutory period bars the party from asserting affirmative defenses in a subsequent proceeding to confirm the award.")(citing *Sheet Metal Workers Int'l Ass'n, Local 252 v. Standard Sheet Metal, Inc.,* 699 F.2d 481, 483 (9th Cir. 1983)).

This application of the plain meaning of the FAA is consistent with the strong federal policy favoring resolution of disputes through arbitration.[6]  In furtherance of this policy,

> [o]nce an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award.  Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited.

> *Foster v. Turley,* 808 F.2d 38, 42 (10th Cir. 1986)(internal citations omitted).

---

[6]*See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1488-89 (10th Cir. 1994)(stating that "[t]here is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration.")(citation omitted); *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir. 1995)(stating that "[t]he Federal Arbitration Act, § 9 U.S.C. §§ 1 – 16, evinces a strong federal policy in favor of arbitration.")(citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987)).

The Deermans assert that because the parties' agreement requires application of New Mexico law, the Court must apply the Arbitration Act as adopted in New Mexico, not the FAA. *See* Response , p. 16, ¶ 12 – Docket No. 32. But the result is the same whether the Court applies the FAA or applicable New Mexico law. New Mexico has adopted the Uniform Arbitration Act. *See* N.M.S.A. 1978 §44-7A-1(a) (Repl. Pamp. 2007)("The provisions of this act may be cited as the 'Uniform Arbitration Act.'"). Similar to the FAA, the New Mexico Uniform Arbitration Act contains a restriction on the time period within which a party may seek to vacate, modify, or correct an arbitration award. *See* N.M.S.A. 1978 § 47-7A-24(a)(Repl. Pamp. 2007)(providing that a motion to vacate an arbitration award "must be filed within ninety days after the movant receives notice of the award . . . ") and N.M.S.A. 1978 §44-7A-25 (Repl. Pamp. 2007)(providing a ninety-day period within which a party can seek to modify or correct an arbitration award). Under N.M.S.A. 1978 § 44-7A-29 (Repl. Pamp. 2007), a party may contest the following decisions through an appeal:

(1) An order denying a motion to compel arbitration;
(2) An order granting a motion to stay arbitration;
(3) An order confirming or denying confirmation of an award;
(4) An order modifying or correcting an award;
(5) An order vacating an award without directing a rehearing; or
(6) A final judgment entered pursuant to the Uniform Arbitration Act.

N.M.S.A. 1978 § 44-7A-29(a) (Repl. Pamp. 2007).

The Deermans point out that this section contemplates a right to appeal an order confirming an arbitration award and contend that, until Plaintiffs seek to confirm the arbitration award, the Deermans have not been allowed to fully realize their appeal rights. However, under New Mexico law, a party who fails to timely file an action seeking to vacate, modify, or correct an arbitration award cannot later contest the award. *See United Technology and Resources, Inc. v. Dar Al Islam,* 115 N.M. 1, 5, 846 P.2d 307, 311 (1993)("By failing to file a motion to modify or

13

correct within ninety days after delivery of the arbitrator's award, [Appellant] waived its right to present its substantive defenses to confirmation of the award."). Thus, where a party fails to make a timely request to vacate, modify, or correct an arbitration award, a court is required to confirm the award. *Id.* Because the Deermans did not seek to modify or vacate the arbitration award within the ninety-day period provided under the New Mexico Uniform Arbitration Act, they have forfeited their right to do so even if the New Mexico Uniform Arbitration Act applies.

## C. Confirmation of the Arbitration Award

The Deermans also argue that Plaintiffs *must* first confirm the Arbitration Award before they can enforce it, and that by seeking to obtain a non-dischargeable judgment based on the collateral estoppel effect of the Arbitration Award Plaintiffs are making an end run around the confirmation requirement. Though Plaintiffs assert that confirmation is permissive, not mandatory, they alternatively request this Court to confirm the Arbitration Award. The Deermans agree that this Court has the authority to confirm the Arbitration Award, but assert that they must be allowed to present evidence exposing the flaws in the Arbitration Award. *See* Case No. 11-09-15348 – Docket No. 237, ¶¶ 7 and 14. This Court agrees that confirmation is not the only method of enforcing an arbitration award.[7] But because entry of a non-dischargeable monetary judgment based on the Arbitration Award would have the same practical effect as

---

[7]*See Photopaint Technologies, LLC v. Smartlens Corp.,* 335 F.3d 152, 159 (2nd Cir. 2003)(acknowledging that "an action at law offers and alternative remedy to enforce an arbitral award . . ."); *Sverdrup Corp. v. WHC Constructors, Inc.,* 989 F.2d 148, 154 (4th Cir. 1993)(stating that "[t]he FAA supplemented rather than extinguished any previously existing remedies[ ]" and finding, therefore, that "an action at law remains a viable alternative to confirmation proceedings under § 9 [of the FAA]" as a means to enforce a final arbitration award)(citations omitted); *Kentucky River Mills v. Jackson,* 206 F.2d 111, 120 (6th Cir. 1953)(explaining that "[a] party may . . . apply to the court for an order confirming the award, but is not limited to such remedy. Prior to the enactment of the United States Arbitration Act, an action at law on the award was the proper method of enforcing it.")(citing *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582)(1924)); *Insurdata Mktg. Services, LLC v. Healthplan Services, Inc.,* 352 F.Supp.2d 1252, 1254-55 (M.D.Fla. 2005)(holding that a party could seek enforcement of arbitration award through common law contract action rather than seeking confirmation of the award under the FAA).

14

confirmation, and Plaintiffs have requested this Court to confirm the Arbitration Award, the Court will consider whether to confirm the Arbitration Award.

Section 9 of the FAA imposes a one-year statute of limitations period for motions to confirm an arbitration award. *Photopaint Technologies, LLC v. Smartlens Corp.,* 335 F.3d 152, 158-160 (2nd Cir. 2003).[8]  The New Mexico Uniform Arbitration Act does not contain a limitations period to confirm an arbitration award. *See* N.M.S.A. 1978 § 44-7A-22 ("After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award, at which time the court shall issue a confirming order . . . ").  Here, the Arbitration Award was entered on March 9, 2012, less than one year ago. Therefore, the motion to confirm the Arbitration Award is not time barred whether confirmation is sought under the FAA or the New Mexico Uniform Arbitration Act.   The Operating Agreement of Falcon Farms, L.L.C., pursuant to which the parties arbitrated their dispute, provides that "judgment on such [arbitration] decision may be entered in any court of competent jurisdiction." *See* Operating Agreement, ¶ 10.14.  This language, combined with the parties' agreement and consent to this Court's authority to confirm the Arbitration Award, is sufficient to allow this Court to confirm the Arbitration Award.[9]

The Deermans assert that this Court should not confirm the Arbitration Award for two reasons:   first, the Deermans take issue with several of the Plaintiffs' undisputed facts set forth in the Motion, although they agree that the Arbitrator made those findings (*see* Response, p.3 n.1); and second, the Deermans assert that the Arbitrator made errors of law.  This Court has

---

[8]*But see Sverdrup,* 989 F.2d at 151-156 (refusing to read Section 9 of the FAA as a strict statute of limitations, reasoning that the language in Section 9 of the FAA is permissive, and holding that the FAA did not bar an action to confirm an arbitration award more than one year after the award).
[9]*Cf. Robinson,* 326 F.3d at 771 (reasoning that because bankruptcy courts are "'courts of the United States' for purposes of Section 3 of the FAA, it would seem to follow that they are 'United States Court[s]' for purposes of Section 10 of the FAA as well.")(citation omitted).

concluded that the Deermans may not, as a defense to confirmation of the Arbitration Award, assert that the award should be vacated, modified or corrected. The Deermans have forfeited any right to contest the Arbitration Award as a defense to confirming it on the grounds to the award should be vacated, modified or corrected.

In addition, even if the Deermans had not forfeited their right to contest the Arbitration Award, their two defenses to confirmation of the Arbitration Award fail as a matter of law. Judicial review of an arbitration award is extremely limited. *Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.,* 430 F.3d 1269, 1275 (10th Cir. 2005)(citation omitted). Erroneous findings of fact made by an arbitrator in issuing an arbitration award are insufficient grounds to vacate or modify the award. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)(stating that "[c]ourts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."); *In re WorldCom, Inc.,* 340 B.R. 719, 726 (Bankr.S.D.N.Y. 2006)("Mere 'errors of law and fact are not grounds for vacating an arbitral award . . . '")(quoting *Sanders v. Gardner,* 7 F.Supp.2d 151, 163 (E.D.N.Y. 1998)(citing *Edward M. Siegel v. Titan Indus. Corp.,* 779 F.2d. 891, 892-93 (2d Cir. 1985)).

Other than the statutory bases for contesting confirmation of an arbitration award authorized under the FAA and the New Mexico Uniform Arbitration Act, there *may* exist a judicially-created basis for vacating an award where an arbitrator acts "in 'manifest disregard' of the law." *Dominion Video,* 430 F.3d at 1275. Under the "manifest disregard" standard, the moving party must demonstrate from the record of the arbitration proceeding that the arbitrator "'knew the law and explicitly disregarded it.'" *Id.* (quoting *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 932 (10th Cir. 2001)(internal citation omitted)). Even when an arbitrator makes a

16

mistake in the application of the law, the arbitrator's findings will not be set aside. *Dominion Video,* 430 F.3d at 1275 (stating that "[m]erely 'erroneous interpretations or applications of the law are not reversible.'")(quoting *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1463 (10th Cir. 1995)). In contesting the Motion, the Deermans have not asserted that the Arbitrator's decision exhibited a "'willful inattentiveness to the governing law.'" *Dominion Video,* 430 F.3d at 1275 (quoting *ARW Exploration,* 45 F.3d at 1463). Nor, for that matter, have the Deermans asserted that there was any other type of misconduct on the part of the Arbitrator, such as fraud or corruption. Consequently, the Court concludes that the Arbitration Award should be confirmed.

D.  Whether to give preclusive effect to the Arbitration Award

Having determined that the Deermans cannot contest the Arbitration Award and that the Arbitration Award should be confirmed, the Court must now determine whether to give collateral estoppel effect to the Arbitration Award for purposes of determining the non-dischargeability of the debt at issue in this adversary proceeding. It is well-settled that collateral estoppel can be applied in bankruptcy to determine dischargeability claims. *See Grogan v. Garner,* 498 U.S. 279, 284-85 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(clarifying that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Further, courts, including bankruptcy courts, have given arbitration awards preclusive effect in subsequent litigation, even in the absence of confirmation of the award.[10] Whether it is

---

[10]*See, e.g., In re Rosendahl,* 307 B.R. 199, 209 (Bankr.D.Or. 2004)(stating that "an unconfirmed arbitration award can be regarded as a final determination for issue preclusion purposes on subject matters of fact and law in appropriate circumstances" and applying collateral estoppel to a non-dischargeability claim under § 523(a)(6) based on an unconfirmed arbitration award); *Wilbert Life Ins. Co. v. Beckemeyer (In re Beckemeyer),* 222 B.R. 318, 321 (Bankr.W.D.Tenn. 1998)(finding that confirmation of an arbitration is not required in order to give preclusive effect, provided the award is final under applicable law); *Val-U Const. Co. of South Dakota v. Rosebud Sioux Tribe,* 146 F.3d 573, 581 (8th Cir. 1998)("'[t]he fact that the award in the present case was not confirmed in a court . . . does not vitiate the finality of the award.'")(quoting *Wellons, Inc. v. T.E. Ibberson Co.,* 869 F.2d 1166, 1169 (8th Cir. 1989)); *Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 267-68 (2nd Cir. 1997)(holding that "res judicata and collateral

appropriate to give collateral estoppel effect in a particular instance depends on applicable state law. *Rosendahl,* 307 B.R. at 208 (stating that "the preclusion effects of decisions of state tribunals in bankruptcy court are determined by the preclusion law of the concerned state" and applying California law to determine whether the arbitration award resulting from arbitration conducted in California was entitled to preclusive effect).

Here, the arbitration was conducted in Arizona, and the Arbitrator's factual findings that Plaintiffs assert have collateral estoppel effect were issued in the Arizona Arbitration Case. Accordingly, the Court will look to the collateral estoppel law of Arizona. Under Arizona law, collateral estoppel will preclude a party from contesting an issue litigated in a prior proceeding if the following requirements are met:

> 1) the issue was actually litigated in the prior proceeding;
>
> 2) the parties had a full and fair opportunity and motive to litigate the issue;
>
> 3) the prior decision was a valid and final decision on the merits;
>
> 4) resolution of the issue was essential to the prior decision; and
>
> 5) the parties to the prior action are the same (or in privity with a party to the prior action).[11]
>
> *Campbell v. SZL Properties, Ltd.,* 204 Ariz. 221, 223, 62 P.3d 966, 968 (Ct.App. 2003)(citing *Garcia v. Gen Motors Corp.,* 195 Ariz. 510, 514, 990 P.2d 1069, 1073 (Ct. App. 1999)); *See also, In re Guccione,* 268 B.R. 10, 14-15 (Bankr.E.D.N.Y. 2001)(same)(citing *Collins v. Miller & Miller, Ltd.,* 189 Ariz. 387, 397, 943 P.2d 774, 757 (1996)).

The Court has not found a case interpreting Arizona law that gave collateral estoppel effect to an arbitration award, nor has either party directed the Court to a case on that point. However, in

---

estoppel apply to issues resolved by arbitration where there has been a final decision on the merits, notwithstanding a lack of confirmation of the award.")(citation and internal quotation marks omitted).

[11] *Scottsdale Mem'l Health Sys., Inc. v. Clark,* 157 Ariz. 461, 466, 759 P.2d 607, 612 (1988)(collateral estoppel only applies to parties and persons in privity with parties).

*Lansford v. Harris,* 174 Ariz. 413, 850 P.2d 126 (Ct.App. 1992), the Arizona Court of Appeals considered whether an issue had already been litigated as part of a fee arbitration, ultimately determining that collateral estoppel did not bar subsequent litigation because the issue had not actually been litigated as part of the arbitration.   The collateral estoppel elements under New Mexico law are substantially similar to the requirements under Arizona law.[12]  Under New Mexico law, arbitration awards may be given collateral estoppel effect provided that the "'arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings[ ]'" and provided that all elements of collateral estoppel are also satisfied.  *Rex v. Manufactured Housing,* 119 N.M. at 505, 892 P.2d at 952 (quoting Restatement (Second) of Judgments § 84 cmt. c (1980)).   The Court will give preclusive effect to the Arbitration Award provided that all the collateral estoppel elements are satisfied.

---

[12]*See Rex, Inc. v. Manufactured Housing Committee,* 119 N.M. 500, 504, 892 P.2d 947, 951 (the required collateral estoppel elements are "'(1) the party to be estopped was a party [or privy] to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.'")(quoting *Shovelin v. Central New Mexico Electric Cooperative, Inc.,* 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993)).   Matched up side by side, the collateral estoppel elements under New Mexico and Arizona law are:

| Arizona | New Mexico |
|---|---|
| The issue was actually litigated | The issue was actually litigated |
| the parties had a full and fair opportunity and motive to litigate the issue; | Once the other three elements are demonstrated, the court determines "whether the non-moving party 'had a full and fair opportunity to litigate the issue in the prior litigation.'" *Rex,* 119 N.M. at 504, 892 P.2d at 951 (quoting *Shovelin,* 115 N.M. at 297). |
| The resolution of the issue was essential to the decision in the prior action | The issue was necessarily determined in the prior litigation |
| The parties in the prior action are the same | the party to be estopped was a party to the prior proceeding |
| The prior decision was a valid and final decision on the merits | |

19

As analyzed above, the Arbitration Award is a valid and final decision on the merits. Further, the issues the Arbitrator decided were actually litigated, and the issues were essential to the issuance of the Arbitration Award. The parties to the Arbitration Award are the same, or in privity, with the parties to this adversary proceeding.[13] Cody Farms, Robert Fletcher, and the Deermans were all parties to the Arbitration Case and are also parties in this adversary proceeding. And while Mrs. Fletcher was not a named party in the Arbitration Case and Cody Farms did not pursue its derivative claims as part of the Arbitration Case,[14] Arizona recognizes the use of non-mutual offensive collateral estoppel by a party who was not a party to the prior litigation against a party who was a party to the prior proceedings. *See In re Ward,* 21 F.3d 1119, *3 n. 8 (9th Cir. 1994)(Table)(stating that "Arizona courts have recently *accepted* the use of nonmutual offensive collateral estoppel as long as the party against whom preclusion is sought had a 'full and fair opportunity to litigate the issue in the prior proceedings.'")(emphasis in original)(quoting *Wetzel v. Arizona State Real Estate Dep't,* 727 P.2d 825, 828-29 (Ariz.Ct.App. 1986), *cert. denied,* 492 U.S. 914 (1987)(remaining citation omitted)).[15]

The Deermans had a full and fair opportunity to litigate the issues raised in the arbitration, and, in fact did actively participate in the arbitration proceeding. *See* Stipulated Order, ¶¶ 3 and 4 (providing that the Deerman's agreement to proceed with arbitration "is

---

[13]Under Arizona law, "privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Hall v. Lalli,* 194 Ariz. 54, 57, 977 P.2d 776, 779 (Ariz. 1999)(internal quotation marks and citations omitted). Mr. Fletcher owns Cody Farms and is one of the two managers of Falcon Farms. Mr. Fletcher is in privity with Cody Farms in its derivative capacity inasmuch as Mr. Fletcher's interests as manager of Falcon Farms and owner of Cody Farms are substantially identical to the derivative interests of Cody Farms in this adversary proceeding. Similarly, Falcon Farms is in privity with Cody Farms, which owns 50% Falcon Farms, and with Mr. Fletcher, one of Falcon Farms' two managers.

[14] *See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, p. 11, n 2.

[15]*Cf. Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1114 (9th Cir. 1999)(the elements for non-mutual collateral estoppel in a federal court are: 1) a full and fair opportunity to litigate the issue in the prior action; 2) the issues to be precluded were actually litigated and necessary to support the judgment in the prior action; 3) the judgment was a final judgment; and 4) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior action)(citing *Pena v. Gardner,* 976 F.2d 469, 472 (9th Cir. 1992)).

conditioned upon the Arbitrator's agreement to provide Debtors with a reasonable opportunity to cure any previous failure to respond to discovery or to otherwise participate in the Arbitration Case" and that the parties would "reasonably cooperate to obtain a new mutually acceptable schedule with the Arbitrator for the amendment of pleadings, the disclosure of expert witnesses and opinions, the completion of discovery and the completion of the arbitration hearing consistent with the applicable rules of arbitration.").

The Court will, therefore, give collateral estoppel effect to the factual findings of the Arbitrator. The only remaining issue is whether the Arbitrator's factual findings establish all elements necessary to a determination of non-dischargeability under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and/or (a)(6).

### E. The Facts Not Subject to Genuine Dispute

The following facts, which include many of the factual findings made by the Arbitrator in connection with the Arbitration Case are not subject to genuine dispute:

1. Falcon Farms is a New Mexico limited liability company, formed in 2005.

2. The members of Falcon Farms are Cody Farms, which holds a 50% interest, and the Deermans, who, together, hold a 50% interest.

3. Cody Farms is a Texas corporation owned by Robert Fletcher.

4. Robert Fletcher and Willard Deerman are the managers of Falcon Farms.

5. The business purpose of Falcon Farms was to buy premium quality alfalfa hay cut in the field by the growers, and to bale the hay in three-tie bales to sell to horse owners and race tracks.

6. Because Mr. Fletcher had no experience in the hay business, it was agreed that Mr. Deerman would be responsible for running the business, including buying

and selling the hay, and that Mr. Fletcher would handle the finances and accounting.

7. Falcon Farms entered into a verbal agreement with James Rascoe to purchase his entire 2006 production of alfalfa hay from approximately 800 acres in the Dell City, Texas area at $125.00 per ton in the windrow.

8. Falcon Farms also purchased hay from Bud Deerman Farms and from other growers in the La Mesa, New Mexico area.

9. On December 14, 2006, Fletcher Farms, Inc. ("Fletcher Farms"), a Texas corporation, bought 320 acres of farmland in the Dell City area, and on February 28, 2007, Fletcher Farms bought another 320 acres.

10. Fletcher Farms added improvements to the properties with the construction of four hay barns, an office and a commercial scale.

11. Beginning in early 2007, Mr. Deerman repeatedly represented to Mr. Fletcher that Falcon Farms' 2006 carryover hay inventory had been sold.

12. Mr. Fletcher believed Mr. Deerman's statement that Falcon Farms' 2006 carryover hay inventory was sold.

13. It would not be unusual for Falcon Farms to be storing hay that had been sold to customers. It is very common in the horse industry for alfalfa growers to store hay for customers for later delivery. *See* Plaintiffs' Supporting Memorandum, ¶ 25; Defendants' Response, p. 2, ¶ D.

14. Mr. Deerman's representations that the 2006 hay had been sold were false. Falcon Farms continued to carry large quantities of 2006 hay inventory through 2007 and 2008.

15. In reliance upon Mr. Deerman's representations that the 2006 carryover hay had been sold, Mr. Fletcher incurred additional debt to purchase hay grown during the 2007 season. Mr. Fletcher would not have agreed to borrow additional money to purchase 2007 hay and would not have agreed to supply additional hay to Falcon Farms if he had known that the 2006 carryover hay had not been sold.

16. Through the summer of 2007, Mr. Deerman continued to represent to Mr. Fletcher that Falcon Farms' hay had been sold, including the 2007 hay that was being purchased, and that Falcon Farms needed to buy more hay.

17. With a large volume of 2006 hay still on hand and with new purchases underway, Falcon Farms was soon experiencing cash flow problems. To address these problems, Falcon Farms applied to Capital Farm Credit for an increase in its revolving line of credit.

18. On June 20, 2007, Falcon Farms, Cody Farms, the Fletchers, and the Deermans signed a new Promissory Note increasing Falcon Farms' revolving credit to $2.5 million. The additional $901,000 in borrowing was fully disbursed to Falcon Farms by July 25, 2007.

19. By the end of 2007 and the beginning of 2008, Falcon Farms owed Fletcher Farms $186,776.20 for a portion of Fletcher Farms' 2007 hay cuttings. Falcon Farms also owed Cody Farms $43,297.20 for money advanced to pay James Rascoe for his fourth 2007 hay cutting.

23

20. In late 2007 and early 2008, as Falcon Farms' financial condition continued to deteriorate, Mr. Deerman began systematically diverting Falcon Farms' cash and hay proceeds to his own benefit.

21. On November 1, 2007, Mr. Deerman withdrew $5,000 from Falcon Farms' bank account by writing a countercheck to himself.

22. On November 30, 2007, Mr. Deerman wrote a check for $15,000 to Bud Deerman Farms from Falcon Farms' bank account.

23. When Mr. Fletcher discovered these payments of $5,000 and $15,000, he confronted Mr. Deerman about the payments and Mr. Deerman said he withdrew the funds because he needed some money.

24. In January and March of 2008, Mr. Deerman wrote checks to Bud Deerman Farms from Falcon Farms' bank account even though Falcon Farms had stopped buying hay months earlier when it ran out of money. The first check was written to Bud Deerman Farms on January 10, 2008 in the amount of $12,558.80. The second check was written to Bud Deerman Farms on January 31, 2008 in the amount of $31,200.00, and the third was written to Bud Deerman Farms on March 19, 2008 in the amount of $27,382.60. These three checks were not written for any legitimate business purpose and constituted an improper conversion of money by Mr. Deerman.

25. On March 18, 2008, the Deermans opened a bank account in the name of Falcon Farms at Bank of the Rio Grande in Las Cruces, New Mexico, with themselves as the sole signatories. The account was opened without the knowledge or consent of Cody Farms or the Fletchers.

26. The Deermans transferred funds from a Falcon Farms account to the account at Bank of the Rio Grande.

27. On September 11, 2008, the Deermans opened a bank account in the name of Falcon Farms at Bank of America with themselves as sole signatories. The account was opened without the knowledge or consent of Cody Farms or the Fletchers.

28. The Deermans transferred funds from Falcon Farms' bank account at Bank of the Rio Grande to Falcon Farms' bank account at Bank of America.

29. On September 28, 2008, the Deermans wrote a check from Falcon Farms' bank account to their personal accountants in the amount of $803.04.

30. On September 22, 2008, the Deermans wrote two checks from Falcon Farms' bank account to the firm of James & Haugland, P.C. in the amount of $5,000.000 and $299.00. On February 16, 2009, the Deermans wrote another check to James & Haugland, P.C. in the amount of $45,000.00. Wiley James, with the firm of James & Haugland, P.C. represented the Deermans personally, represented the Deermans in their Chapter 11 bankruptcy case, and currently represents Deerman Farms, Inc. in its Chapter 12 bankruptcy case.

31. On January 5, 2009, the Deermans wrote a check from Falcon Farms' bank account to Hubert & Hernandez, P.A. in the amount of $25,000.00, and on January 4, 2009, the Deermans wrote another check from Falcon Farms' bank account to Hubert & Hernandez, P.A. in the amount of $23,000.

32. Dean B. Cross, Esq., one of the attorneys who represented the Deermans in the Arbitration Case, was previously associated with Hubert & Hernandez,

25

P.A.   The Arbitration Case was filed just before the two checks were written
to Hubert & Hernandez, P.A.

33. On April 20, 2009,  the Deermans wrote a check from Falcon Farms' bank
account to James & Haugland, P.C. in the amount of $5,000.00 representing
the Deermans' half of the retainer for attorney Steve James who was retained
to serve as independent counsel for Falcon Farms in the action filed by Capital
Farm Credit.    The Deermans agreed to split the cost of the retainer with
Cody Farms and the Fletchers, who paid the other half of the retainer.

34. On April 20, 2009, the Deermans wrote a check from Falcon Farms' bank
account in the amount of $14,475.00 to the American Arbitration Association
in connection with the Arbitration Case.    The Deermans admit that this was a
personal expense paid by them with Falcon Farms' funds.

35. In March of 2006, the Deermans paid $25,000.00 from Falcon Farms' bank
account to the Deerman's late son, Wade Deerman, to purchase a used mobile
home.  Mr. Fletcher never agreed to purchase the mobile home from Wade
Deerman, and the mobile home was never used in Falcon Farms' business.

36. The mobile home was eventually sold to Mr. Deerman for $6,000, when
Falcon Farms' equipment was liquidated.

37. In 2007, Mr. Deerman received distributions from Falcon Farms' petty cash in
the amount of $16,000.00 but provided receipts supporting only the sum of
$1029.17, leaving a balance owed by Mr. Deerman to Falcon Farms in the
amount of $14,970.00.

38. In 2008, Mr. Deerman received distributions from Falcon Farms' petty cash in the amount of $10,600.00 but provided no receipts justifying these distributions.

F.  Whether Partial Summary Judgment Should Be Granted

i)  11 U.S.C. § 523(a)(2)(A) – non-dischargeability based on fraud

Debts for money obtained by false pretenses, a false representation, or actual fraud are non-dischargeable under 11 U.S.C. § 523(a)(2)(A).  There are five required elements under this subsection to establish the non-dischargeability of a debt obtained by false representation:  1) the debtor made a false representation to the creditor; 2) the debtor made the false representation with the intent to deceive the creditor; 3) the creditor relied on the false representation; 4) the creditor's reliance was justifiable[16]; and 5) the false representation caused the creditor to sustain a loss.  *See Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).  "False representations are 'representations knowingly and fraudulently made that give rise to the debt.'" *Adams Cnty. Dept. of Soc. Services v. Sutherland-Minor (In re Sutherland-Minor),* 345 B.R. 348, 354 (Bankr.D.Colo. 2006)(quoting *Cobb v. Lewis (In re Lewis),* 271 B.R. 877, 885 (10th Cir. BAP 2002)).  False pretenses, as distinguished from false representations, "involve[ ] an implied misrepresentation that is meant to create and foster a false impression." *Gordon v. Bruce (In re Bruce),* 262 B.R. 632, 636 (Bankr.W.D.Pa. 2001)(citing *In re Scarlata,* 127 B.R. 1004, 1009 (N.D.Ill. 1991)).  In other words, "a 'false pretense' is an 'implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Stevens v. Antonious (In re Antonious),* 358 B.R. 172, 182 (Bankr.E.D.Pa. 2006)(quoting *In re Haining,* 119 B.R. 460, 463-64 (Bankr.D.Del.

---

[16]*See Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)(establishing justifiable reliance standard under § 523(a)(2)(A)).

1990)(remaining citations omitted).[17] "False pretenses have "also been defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor." *Id.* at 182 (citing *In re Barr,* 194 B.R. 1009, 1019 (Bankr.N.D.Ill. 1996)).

The Arbitrator's factual findings issued as part of the Findings of Fact and Conclusions of Law entered in the Arbitration Case include the following:

> While acting as a managing member of Falcon [Farms], Mr. Deerman represented to the Fletchers and others that the millions of dollars' worth of hay Falcon [Farms] had in inventory in the fall of 2006 and throughout 2007, including the large amount of hay stacked out of doors, was sold. These representations were false. In fact, the hay had not been sold and no contracts for sale of the hay had been made. Mr. Deerman knew that his representations were false at the time they were made, and he made them with the intent and purpose of deceiving Claimants [Cody Farms and the Fletchers].

> The evidence reflects that Mr. Deerman concealed his failure or inability to sell the thousands of tons of hay purchased by Falcon [Farms] to induce Claimants to continue their financial support of Falcon [Farms]'s operations.

> In reliance upon Mr. Deerman's representations that Falcon [Farms]' hay was sold, Claimants advanced additional money and incurred additional liability for Falcon [Farms]' borrowing. In June of 2007, Claimants agreed to sign as co-borrowers on $901,000.00 in increased borrowing from Capital Farm Credit.

> Claimants also agreed to provide the production from their own hay farms, for which they are owed $186,776.20, and to advance $43,297.20 to Falcon [Farms] to fund additional hay purchases from James Rascoe. Claimants would not have agreed to advance additional funds or to incur additional debt if the true status of Falcon [Farms]' hay inventories had been known to them.

> Claimants sustained damages in the amount of $1,030.073.40 as the direct and proximate result of their reasonable reliance on Mr. Deerman's materially false representations.

> Findings of Fact and Conclusions of Law, pp 14- 15, ¶¶ 4 – 8.

---

[17]*See also*, *The William W. Barney, M.D. P.C. Retirement Fund v. Perkins (In re Perkins),* 298 B.R. 778, 788 (Bankr.D.Utah 2003)(stating that "[a] false pretense as used in § 523(a)(2)(A) includes material omissions, and means 'implied misrepresentations or conduct intended to create and foster a false impression.'")(quoting *Peterson v. Bozzano (In re Bozzano),* 173 B.R. 990, 993 (Bankr.M.D.N.C. 1994)(remaining citation omitted)).

28

Though set forth as part of the Arbitrator's legal conclusions, the above statements contain factual findings that are supported by the Arbitrator's findings of fact. These facts establish all elements necessary to a determination of non-dischargeability under 11 U.S.C. § 523(a)(2)(A). Mr. Deerman made false representations to the Cody Farms and the Fletchers that the 2006 hay inventory had been sold, when, in fact, it had not. Mr. Deerman knew that his representations were false at the time he made them, and he made them with the intent to deceive Cody Farms and the Fletchers. In reliance on Mr. Deerman's representations, Cody Farms and the Fletchers agreed to co-sign a promissory note to Capital Farm Credit that increased Falcon Farms' borrowing by $901, 000, provided additional production from their own hay farms for which they are owed $186,776.20, and advanced $43,297.20 to fund additional hay purchases from James Rascoe.

The Arbitrator also found that the Fletchers' reliance on Mr. Deerman's misrepresentations was reasonable. It was not unusual for hay that had been sold to be stored, which supports an inference that the Fletchers had no reason to suspect that Mr. Deerman's representation that the 2006 hay had been sold was false. Non-dischargeability under 11 U.S.C. § 523(a)(2)(A) requires only justifiable, not reasonable, reliance. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)(establishing justifiable reliance standard under 11 U.S.C. § 523(a)(2)(A)). Reasonable reliance is a higher standard than justifiable reliance. *See Columbia State Bank, N.A. v. Daviscourt (In re Daviscourt),* 353 B.R. 674, 684 n. 23 (10th Cir. BAP 2006)(stating that "'[r]easonable' reliance requires a higher standard of care by the relying party than does 'justifiable' reliance.")(citations omitted). Consequently, the Arbitrator's finding that the Fletchers' reliance was reasonable is more than sufficient to satisfy the reliance requirement under 11 U.S.C. § 523(a)(2)(A).

29

ii)    11 U.S.C. § 523(a)(6) – willful and malicious injury

Debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity" are non-dischargeable. 11 U.S.C. § 523(a)(6). Non-dischargeability under this subsection requires that the debtor's actions be both willful and malicious. *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004)("Without proof of *both* [willful and malicious elements under 523(a)(6)], an objection to discharge under that section must fail.")(emphasis in original); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley),* 235 B.R. 651, 655 (10th Cir. BAP 1999)(stating that "[i]n the Tenth Circuit, the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements – that the injury was both 'willful' and 'malicious.'").[18]

Plaintiffs assert that Cody Farms and the Fletchers were willfully and maliciously injured by the Deermans' purposeful and deliberate diversion of cash and hay proceeds from Falcon Farms' bank accounts. The Arbitrator's Findings of Fact and Conclusions of law include findings that the Deermans wrote checks from Falcon Farms' bank accounts to pay Deermans'

---

[18]The "willful" element requires both an intentional act and an intended harm; an intentional act that leads to harm is not sufficient. *See Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998)(holding that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury.")(emphasis in original). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. In The Tenth Circuit has articulated the "willful" component as requiring proof that the debtor "must 'desire . . . [to cause] the consequences of his act . . . or believe [that] the consequences are substantially certain to result from it.'" *Moore,* 357 F.3d at 1129 (quoting *Longley,* 255 B.R. at 657 (quoting Restatement (Second) of Torts § 8A (1965)). The "malicious" element requires an intentional, wrongful act, done without justification or excuse. *See, e.g., Bombardier Capital, Inc. v. Tinkler (In re Tinkler),* 311 B.R. 869, 880 (Bankr.D.Colo. 2004)(finding that "the malice prong of 11 U.S.C. § 523(a)(6) is satisfied upon a showing [that] the injury was inflicted *without just cause or excuse.*")(citations omitted)(emphasis in original)); *America First Credit Union v. Gagle (In re Gagle),* 230 B.R. 174, 181 (Bankr.D.Utah 1999)(finding that "[i]n order for an act to be willful and malicious it must be a deliberate or intentional injury (willful) that is performed without justification or excuse (malicious)."); *Saturn Systems, Inc. v. Militare (In re Militare),* 2011 WL 4625024, *3 (Bankr.D.Colo. 2011)("a *malicious* act under § 523(a)(6) is a 'wrongful act, done intentionally, without just cause or excuse.'")(quoting *Tinkler,* 311 B.R. at 880 (quoting *Tinker v. Colwell,* 193 U.S. 473, 486, 24 S.Ct. 505 (1904)); *Tso v. Nevarez (In re Nevarez),* 415 B.R. 540, 544 (Bankr.D.N.M. 2009)("'Malicious' requires that an intentional act be 'performed without justification or excuse.'")(quoting *Gagle,* 230 B.R. at 181)). *But cf. McCain Foods USA, Inc. v. Shore (In re Shore),* 317 B.R. 536, 543 (10th Cir. BAP 2004)(pointing out that "neither *Geiger* nor the Tenth Circuit have explicitly addressed whether a plaintiff must demonstrate that an injury occurred without just cause or excuse in a § 523(a)(6) proceeding or even what circumstances might establish such an element[.]").

personal expenses, the expenses of a separate Deerman entity, or for the benefit of members of

the Deermans' family, that had no legitimate business purpose for Falcon Farms, and that the

Deermans diverted hay proceeds from Falcon Farms for their own benefit.  Conversion can

support a finding on non-dischargeability under 11 U.S.C. § 523(a)(6).[19]  However, a threshold

requirement to a determination of non-dischargeability under 11 U.S.C. § 523(a)(6) premised on

conversion is whether the plaintiff had a property interest in the converted property.  *See May v.*

*Cagan (In re Cagan),* 2010 WL 3853316, *4 (Bankr.D.N.M. 2010)(stating that whether the

plaintiff had a property interest in the funds at issue is a prerequisite to establishing a

nondischargeable claim under 11 U.S.C. § 523(a)(6) and is also required to establish the tort of

conversion under state law); *Shah,* 96 B.R. at 293("The threshold issue for Plaintiff is whether it

had any personal property over which Defendants asserted wrongful dominion.").  Neither Cody

Farms nor the Fletchers had a security interest in the funds that the Deermans diverted from

Falcon Farms' bank accounts; nor did the funds in Falcon Farms' bank accounts constitute

property of the Fletchers or property of Cody Farms.[20]  Cody Farms' and the Fletchers' only

interest in the diverted funds is an indirect one arising from Cody Farms' membership interest in

Falcon Farms.   Consequently, Cody Farms and the Fletchers are not entitled to summary

judgment on their direct claim for non-dischargeability under 11 U.S.C. § 523(a)(6).  Cody

Farms may, however, be entitled to assert a derivative claim on behalf of the limited liability

company.  As discussed below, the Court concludes that Cody Farms has derivative standing to

assert claims under 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6) on behalf of Falcon Farms.

---

[19]*See Longley,* 235 B.R. at 657 (acknowledging that "conversion can, under certain circumstances, give rise to a
non-dischargeable debt pursuant to § 523(a)(6).");  *Bank of Utah v. Auto Outlet, Inc. (In re Auto Outlet, Inc.),* 71
B.R. 674, 676 (Bankr.D.Utah 1987)("Although this section does not specifically mention conversion, 'willful and
malicious injury' was intended to include 'willful and malicious conversion.'")(citing 124 Cong.Rec.H.11096 (daily
ed. Sept. 28, 1978); S. 17412 (daily ed. Oct. 6, 1978)(statement of Rep. Edwards and Sen. DeConcini)); *Borg-
Wagner Acceptance Corp. v. Shah (In re Shah),* 96 B.R. 290, 293 (Bankr.C.D.Cal. 1989)("The tort of conversion is
one type of wrongful behavior that may be nondischargeable under Section 523(a)(6).")(citations omitted).
[20]Falcon Farms is also a plaintiff in this adversary proceeding through Cody Farms' derivative claims.

The Arbitrator's factual findings sufficiently establish that the Deermans acted both willfully and maliciously in converting Falcon Farms' cash and hay proceeds to their own use. The Deermans' actions were deliberate, necessarily caused Falcon Farms an intentional financial harm, and were undertaken without just cause or excuse. Therefore, all elements necessary to sustain a claim for non-dischargeability of debt under 11 U.S.C. § 523(a)(6) have been satisfied.

       iii)     <u>11 U.S.C. § 523(a)(4) -   fraud or defalcation while acting in a fiduciary capacity, larceny or embezzlement.</u>

Plaintiffs assert that the Arbitration Award in the amount of $254,289.67 "for the misappropriation and diversion of the assets and funds of Falcon Farms" constitutes a non-dischargeable debt under 11 U.S.C. § 523(a)(4). *See* Arbitrator's Findings of Fact and Conclusions of Law, p. 16, ¶ 16. Debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

     *<u>Fiduciary Capacity under 11 U.S.C. § 523(a)(4)</u>*

Fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4) is extremely narrow; it only arises when there is an express or technical trust, and must exist prior to and not as a result of the wrongdoing. *See Duncan v. Neal (In re Neal),* 324 B.R. 365, 370 (Bankr.W.D.Okla. 2005), *aff'd,* 342 B.R. 384 (10th Cir. BAP 2006)("The Tenth Circuit has taken a very narrow view of the concept of fiduciary duty under this section."); *Allen v. Romero,* 535 F.2d 618, 621 (10th Cir. 1976)(stating that "[t]he exemption under §17(a)(4) [the predecessor under the former Bankruptcy Act to §523(a)(4)] applies only to technical trusts and not to those which the law implies from contract.")(citation omitted). *See also, Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 154, 79 L.Ed.3d 393 (1934)(noting that the debtor "must have been a trustee before the wrong and without reference thereto."). "Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or

bargaining power is sufficient to establish a fiduciary relationship for purposes of dischargeability." *Young,* 91 F.3d at 1372 (internal citations omitted).

Plaintiffs assert that the Deermans owed them a fiduciary duty within the meaning of 11 U.S.C. § 523(a)(4) based on their status as members of a limited liability company. In support of their argument, Plaintiffs direct the Court to the language in the New Mexico statutes governing limited liability companies providing that members of limited liability companies owe a fiduciary duty to other members. *See* N.M.S.A. 1978 § 55-19-16(D). A statute can impose fiduciary duties sufficient to establish a technical trust for purposes of 11 U.S.C. § 523(a)(4).[21]

However, even when a state statute imposes fiduciary duties upon members of a limited liability company, courts often conclude that such duties are insufficient to establish a trust within the meaning of 11 U.S.C. § 523(a)(4). *See, e.g., Abraham, Bar-Am and Nourit, LLC v. Grosman (In re Grosman),* 2007 WL 1526701, *16 (Bankr.M.D.Fla. May 22, 2007)(finding that "[a]lthough Florida Statute Section 608.4225 does supply certain fiduciary duties, for example, holding limited liability company property as trustee and refraining from intentional misconduct, the statute does not establish any type of express or technical trust as required by Section 523(a)(4)."); *Moses v. Duncan (In re Duncan),* 2011 WL 6749054, * (Bankr.N.D.Okla. Dec. 22, 2011)(concluding that the "trust" provision of the Oklahoma limited liability statute created a "'trust ex maleficio (i.e., a trust arising from malfeasance)" which falls outside the scope of § 523(a)(4)). *Cf. Holaday v. Seay (In re Seay),* 215 B.R. 780, 787 (10th Cir. BAP 1997)("Even though the Oklahoma state courts may approve of a general policy that creates a fiduciary duty

---

[21]*See, e.g., Allen v. Romero,* 535 F.2d at 621 (finding that the New Mexico statute governing licensed contractors "clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts."). *See also, Neal,* 324 B.R. at 370 (a technical trust is a trust "imposed by state statutes . . . which may lead to the existence of a fiduciary relationship."); *Cundy v. Woods (In re Woods),* 284 B.R. 282, 288 (D. Colo. 2001)(noting that "[a] technical trust may arise as a result of defined obligations imposed upon the debtor by state or federal statute.")(citing *Allen v. Romero,* 535 F.2d at 622).

between joint venturers, this policy is not sufficient to fulfill the Tenth Circuit's requirements of a common law trust for purposes of § 523(a)(4).").[22]

The relevant New Mexico statute governing limited liability companies provides, in part:

> every member who is vested with particular management responsibilities by the articles of organization or an operating agreement and every manager shall account to the limited liability company and hold as trustee for it any profit or benefit he derives from:
> (1) any transaction connected with the conduct or winding up of the limited liability company; or
> (2) any use by such member or manager of the company's property, including confidential or proprietary information of the limited liability company or other matters entrusted to him as a result of his status as a member or manager unless:
>> (a) the material facts of the relationship of the interested manager or member to the contract, transaction or use were disclosed or known to all of the other managers or members who, in good faith, authorized or approved the contract, transaction or use by: 1) the affirmative vote of a majority of all of the disinterested managers; or 2) the affirmative vote of all of the disinterested members, even though all of the disinterested managers were less than a majority of all of the managers or even though all of the disinterested members did not have a majority share of the voting power of all of the members; or
>> (b) the contract, transaction or use was fair to the limited liability company when it was authorized or approved.

N.M.S.A. 1978 § 55-19-16(D). [23]

This statutory language uses trust-type language requiring every member to "hold as trustee" any profit or benefit derived from any transaction or use of the limited liability company's property. Plaintiffs argue that because the statute uses trust-type language and

---

[22]*But see, e.g., Andrews v. Wells (In re Wells),* 368 B.R. 506, 512 (Bankr.M.D.La. 2006)(finding that the Louisiana limited liability company statute imposed a fiduciary duty on a debtor-member of a limited liability company sufficient to establish fiduciary capacity under 11 U.S.C. § 523(a)(4), provided that the debtor actually takes part in managing the entity.); *Lewis v. Spivey (In re Spivey),* 440 B.R. 539, 545 (Bankr.W.D.Ark. 2010)(finding that "a managing member of a limited liability company may also have a fiduciary relationship with the limited liability company" and noting that Arkansas has recognized "that a corporate officer is charged with a fiduciary duty to the corporation . . . sufficient for a § 523(a)(4) cause of action.")(citing *Bell v. Collins (In re Collins),* 137 B.R. 754, 756 (Bankr.E.D.Ark. 1992)). *Cf. The Credit Experts, LLC v. Santos (In re Santos),* 2012 WL 2564366, *5 (Bankr.E.D.Va. July 2, 2012)(noting that courts "have held that partners have fiduciary duties to each other, for purposes of § 523(a)(4).")(citing *FNFS, Ltd.,v. Harwood (In re Harwood),* 637 F.3d 615 (5th Cir. 2011) and *Ragsdale v. Haller,* 780 F.2d 794 (9th Cir. 1986)).

[23]Because subsection (a) refers to transactions described in subsection (1), subsections (a) and (b) apply not only to subsection (2) but also to subsection (1).

defines the trust res as "any profit or benefit" derived from the use of the limited liability company's property, the statute imposes a technical trust within the meaning of 11 U.S.C. § 523(a)(4). This Court disagrees.

Although the statute uses trust-type language, it contemplates a trust that would arise as a result of a member's failure to account. That type of trust is a trust that arises as a result of a member's wrongdoing and cannot support a finding of fiduciary capacity for purposes of 11 U.S.C. § 523(a)(4). The substance of the New Mexico statute is similar to the Oklahoma statute at issue in *Duncan,* 2011 WL 6749054 which the bankruptcy court concluded did not meet the non-dischargeability requirements for a technical trust. That statute provided in relevant part that

> every manager must account to the limited liability company and hold as trustee for it any profit or benefit derived by the manager without the informed consent of the members from any transaction connected with the conduct or winding up of the limited liability company or from any personal use by the manger of its property.

18 O.S. 2001, § 2016(5).

The *Duncan* court reasoned that the statutory language "without the consent" renders the so-called trust a trust *ex maleficio* which falls outside the scope of 11 U.S.C. § 523(a)(4). *Duncan* 2011 WL 6749054 at *18 (relying on case law from the Tenth Circuit Bankruptcy Appellate Panel interpreting similar language in the Uniform Partnership Act). Sections 55-19-16(D)(2)(a) and (b) similarly contemplate consent or approval from the disinterested member or managers, such that action taken *without* consent or approval is what gives rise to the trust relationship. The Court concludes that the statute creates a trust that arises from a member's malfeasance which cannot support a non-dischargeability claim under 11 U.S.C. § 523(a)(4). Thus, Plaintiff's claims premised on a breach of fiduciary duty while acting in a fiduciary capacity fail as a matter of law.

<u>*Embezzlement and Larceny Under 11 U.S.C. § 523(a)(4)*</u>

Embezzlement and larceny are separate grounds under 11 U.S.C. § 523(a)(4) for which no fiduciary capacity is required. *See In re Lynch,* 315 B.R. 173, 175 (Bankr.D.Colo. 2004)("A claim for nondischargeability under Section 523(a)(4) may rest on proof of larceny or embezzlement, without proof of a fiduciary relationship.")(citing *In re Wallace,* 840 F.2d 762, 765 (10th Cir. 1988)).[24] Embezzlement, for purposes of non-dischargeability under 11 U.S.C. § 523(a)(4), is defined as "'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Wallace,* 840 F.2d at 765 (citation to quoted case omitted).[25] "'Larceny is defined as the 'fraudulent and wrongful taking and carrying away of property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property.'" *Dorado,* 400 B.R. at 309 (quoting *In re Tilley,* 286 B.R. 782, 789 (Bankr.D.Colo. 2002)(additional internal quotation marks and citations omitted)). Larceny differs from embezzlement in that larceny "'requires that the funds originally come into the Debtor's hands unlawfully,'" whereas with embezzlement, the debtor initially acquires the property lawfully. *Id.* (quoting *Tinkler,* 311 B.R. at 876 (quoting *Webber v. Giarratano (In re Giarratano),* 299 B.R. 328, 338 (Bankr.D.Del. 2003)). Both larceny and embezzlement require that the debtor act with fraudulent intent.[26]

---

[24] *See also, Hernandez v. Dorado (In re Dorado),* 400 B.R. 304, 309 (Bankr.D.N.M. 2008)(acknowledging that debts may be excepted from discharge when the debts result from a debtor's embezzlement or larceny even in the absence of a fiduciary relationship).

[25]*See also Hill v. Putvin (In re Putvin),* 332 B.R. 619, 627 (10th Cir. BAP 2005)("Under 523(a)(4) embezzlement will have occurred when there is a 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude, or intentional wrong, rather than implied or constructive fraud.'")(additional internal quotation marks and citations omitted)); *Marks v. Hentges (In re Hentges),* 373 B.R. 709, 723 (Bankr.N.D.Okla. 2007)("embezzlement requires proof of a defalcation or misappropriation of property by one to whom it is entrusted, plus proof of fraudulent intent.").

[26]*See Tinkler,* 311 B.R. at 876 ("'Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner.'")(quoting *Kaye v. Rose (In re Rose),* 934 F.2d 901, 902 (7th Cir. 1991)); *Tilley,* 286 B.R. at 789 (among the required elements for embezzlement is fraudulent intent); *Sullivan v. Clayton (In re Clayton),* 198 B.R. 878, 885 (Bankr.E.D.Pa. 1996)("Essential to both larceny and embezzlement is

The Arbitrator's findings of fact are sufficient to support a claim for embezzlement.  To demonstrate that the debtor fraudulently appropriated property for purposes of establishing embezzlement under 11 U.S.C. § 523(a)(4), the plaintiff must show that the debtor appropriated the property for a use other than that for which it was entrusted or that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used, and the circumstances indicate fraud.[27]  The Arbitrator's findings of fact establish that Mr. Deerman diverted cash from Falcon Farms to his own benefit, that certain checks he wrote were not written for any legitimate business purpose, and that such actions constituted an improper conversion of money by Mr. Deerman.  These facts establish that Mr. Deerman used property of Falcon Farms for a purpose other than that for which the funds were entrusted to him.   Mr. Deerman wrote checks from Falcon Farms' bank account to pay for his own personal expenses, including legal fees, accountant's fees, and the Deermans' share of the arbitration costs.  He also used Falcon Farms' funds to pay Bud Deerman Farms even though Falcon Farms had stopped buying hay months earlier when it ran out of money.  Mr. Deerman used petty cash without supporting the disbursement with proper receipts.  Finally, Mr. Deerman used Falcon Farms' funds to purchase his son's mobile home.  The Award determined that the Deermans are liable to Plaintiffs "for the sum of $254,289.67 for the misappropriation and diversion of assets and funds of Falcon Farms."   *See* Final Arbitration Award, ¶ 1(b).  The Arbitration Award together with the Findings and Conclusions are sufficient for the Court to infer that the Deermans acted with

---

the element of fraudulent intent.")(citing  *In re Graham,* 194 B.R. 369, 374 (Bankr.E.D.Pa. 1996) and *In re Spector,* 133 B.R. 733, 741 (Bankr.E.D.Pa. 1991)).

[27] *See, e.g., In re Bucci,* 493 F.3d 635, 644 (6th Cir. 2007)("'A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.'")(quoting *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir. 1996)); *Belfry v. Cardozo (In re Belfry),* 862 F.2d 661, 662 (8th Cir. 1988)("A plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used.")(citation omitted); *Kruse v. Murray (In re Murray),* 408 B.R. 268, 275 (Bankr.D.Mo. 2009)(to establish a claim for embezzlement, the plaintiff must demonstrate that "the debtor was not lawfully entitled to use the funds for the purpose for which they were in fact used.")(citation omitted).

the requisite fraudulent intent to establish a claim for embezzlement within the meaning of 11 U.S.C. § 523(a)(4).

However, Plaintiffs claim based on embezzlement cannot be asserted directly against the Deermans since the funds that the Deermans misappropriated belonged to Falcon Farms; the embezzlement claim is a derivative claim. *See Spivey),* 440 B.R. at 545 (finding that a claim for defalcation by debtor of limited liability company's property belonged to the limited liability company since the duty and the debt was owed to the company; consequently, the member's interest in the claim was derivative); *White v. Whittle (In re Whittle),* 449 B.R. 427, 430 (Bankr.M.D.Fla. 2011)(finding that plaintiffs could not assert a direct claim for embezzlement against a member of limited liability company because any damage would be inflicted on the limited liability company, not the plaintiffs individually). *See also Wallner v. Liebl (In re Liebl),* 434 B.R. 529, 541 (Bankr.N.D.Ill. 2010)(concluding that plaintiff could not recover *individually* on a claim based on the debtor's embezzlement of funds from limited liability company because plaintiff could not demonstrate that the misappropriated property belonged to him personally).

### *Derivative Standing*

Plaintiffs did not pursue derivative claims as part of the Arbitration Case[28] but have filed this adversary proceeding both individually and on behalf of Falcon Farms. As a member of Falcon Farms, Cody Farms can sue derivatively on behalf of the limited liability company. The New Mexico Limited Liability Company Act provides, in relevant part:

> a suit on behalf of the limited liability company may be brought in the name of the limited liability company by: (A) any member of the limited liability company who is authorized to sue by the affirmative vote of members having a majority of the voting power of all members **whose interests are not adverse** to the interests of the limited liability company, whether or not the articles of organization or an operating agreement vests management of the limited liability company in one or more managers.

---

[28]*See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, p. 11 n. 2.

*See* N.M.S.A. 1978 § 53-19-58 (emphasis added).

The members of Falcon Farms are Cody Farms and the Deermans. Because the Deermans' interest is adverse to the interest of Falcon Farms, and the Deermans and Cody Farms are the only members of Falcon Farms, Cody Farms was not required under N.M.S.A. 1978 § 53-19-58 to obtain a vote before initiating a derivative suit on behalf of Falcon Farms. *See In re D'Anello,* 477 B.R. 13, 23 (Bankr.D.Mass. 2012)(reasoning that when 1) other members did not raise the lack of a vote authorizing a derivative suit as grounds for dismissal; 2) the derivative claims were brought against members whose claims were adverse to the limited liability company, and 3) the only member eligible to vote to authorize the suit was the member who sought to file the suit, filing the complaint impliedly constituted the necessary vote to authorize a derivative suit)(quoting *Billings v. GTFM, LLC,* 449 Mass. 281, 289 n. 18, 867 N.E.2d 714 (Mass. 2007)).[29]

Because this adversary proceeding was brought both derivatively and individually, the Court finds that Cody Farms is entitled to partial summary judgment on its derivative claim for embezzlement against the Deermans brought on behalf of Falcon Farms based on the arbitrator's findings of fact. *Cf. Liebl),* 434 B.R. at 537 (sustaining non-dischargeability claim for embezzlement brought derivatively on behalf of a limited liability company, inferring that the debtor acted with fraudulent intent by appropriating funds from the limited liability company for his own personal use and benefit).

---

[29]Plaintiffs cite *Bevan v. Davita, Inc.,* 2011 WL 4343223 (D.N.M.)(Arbitration Award) which interpreted N.M.S.A. 1978 § 53-19-58 to bar a manager from bringing a derivative claim against the other manager in a two-manager limited liability company because the manager who sought to file suit did not have the majority vote authorizing the action, as the reason Plaintiffs declined to pursue a derivative claim in the Arbitration Case. That decision of an arbitrator is not binding on this Court. Section 53-19-18 does not serve as a bar to a derivative action where, as here, Cody Farms holds all of the voting power of all members where the interests are not adverse to the interests of Falcon Farms. Moreover, similar to *D'Anello,* the Deermans have not raised a lack of standing on the part of Cody Farms to assert a derivative claim as grounds for dismissal; consequently, they have waived it.

iv)    <u>Damages – the amount of the non-dischargeable debt</u>

The Arbitration Award awarded the sum of $254,289.67 based on "the misappropriation and diversion of the assets and funds of Falcon Farms." *See* Arbitration Award, p. 2, ¶ 1(b). As analyzed above, these misappropriated funds are non-dischargeable under 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6) as a derivative claim brought by Cody Farms on behalf of Falcon Farms. The Arbitration Award includes pre-judgment interest in the amount of $135,419.94 based on the award for the Deermans' misappropriation and diversion of Falcon Farms's assets. *See* Arbitration Award, p.2, ¶ 1(b). This pre-judgment interest amount is entitled to collateral estoppel effect and constitutes part of the non-dischargeable judgment. *Cf. In re Roussos,* 251 B.R. 86, 94 (9th Cir. BAP 2000), *aff'd,* 33 Fed.Appx. 365 (9th Cir. 2002)(acknowledging that collateral estoppel can be applied to a state court's award of punitive damages and included as part of a non-dischargeable debt, and observing further that "a nondischargeable 'debt' may include prejudgment interest, attorneys' fees and costs, and punitive damages, not all of which are actual out-of –pocket losses to the creditor due to fraud, but all of which arise from the debtor's liability for the fraudulent conduct."); *The Aetna Casualty and Surety Co. v. Markarian (In re Markarian),* 228 B.R. 34, 45 (1st Cir. BAP 1998)(concluding, based on *Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 1215, 140 L.Ed.2d 341 (1998) that the entire amount of damages awarded by the district court, including the pre- and post-judgment interest was excepted from discharge).

Plaintiffs also request the Court to determine that $1,130,073.40 is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt procured by fraud. The Arbitration Award provides:

> Claimants sustained damages in the amount of $1,130,073.40 as the direct and proximate result of their reasonable reliance on Mr. Deerman's materially false representations. This amount includes $901,000.00 in increased liability to Capital Farm Credit as co-borrowers on Falcon's revolving line of credit, $186,776.20 for the value of additional

40

hay provided to Falcon and $43,297.20 in additional advances to fund hay purchases from James Rascoe.

*See* Findings of Fact and Conclusions of Law, p. 15, ¶ 8.

However, the Arbitrator's findings of fact establish that $186,776.20 of the $1,130,073.40 in damages is attributable to additional hay provided to Falcon Farms by Fletcher Farms, not by the Fletchers individually and not by Cody Farms. *See* Findings of Fact and Conclusions of Law, p. 7, ¶ 30 (stating that "[t]he La Mesa office [of Falcon Farms] only paid Fletcher Farms for its first and second cuttings and a small portion of its third cutting in 2007, leaving a balance due of $186,776.20 for Fletcher Farm's [sic.] third and fourth cuttings."). Fletcher Farms is not a party to this adversary proceeding. Thus, $186,776.20 cannot be included in the total amount of the non-dischargeable judgment in favor of the Plaintiffs. The Arbitrator's factual findings also establish that Cody Farms paid the $43,297.20 to James Rascoe. *Id.* ("Falcon also failed to pay James Rascoe $43,297.20 for his fourth cutting. Cody Farms paid this invoice as an additional advance to Falcon."). Cody Farms is owned by Mr. Fletcher, and is a party to this adversary proceeding, both individually, and derivatively on behalf of Falcon Farms. As analyzed above, Plaintiffs' fraud claims against the Deermans are direct claims. Cody Farms, is, therefore, entitled to a non-dischargeable judgment under 11 U.S.C. § 523(a)(2)(A) in the amount of $43,297.20.

With respect to the remaining $901,000.00 component of the $1,130,073.40 award attributable to the Deermans' misrepresentations, Cody Farms and the Fletchers each co-signed the promissory note that increased Falcon Farms' liability to Capital Farm Credit by $901,000.00. However, it is not entirely clear from the Arbitrator's factual findings what portion of this debt Plaintiffs paid to Capital Farm Credit. The Arbitrator's factual findings establish that Capital Farm Credit filed a complaint against Falcon Farms, Cody Farms, the Fletchers and the

41

Deermans, and that Capital Farm Credit agreed to settle its claims against Cody Farms and the Fletchers for the total sum of $1,500,000.00 pursuant to a Compromise and Settlement Agreement. *See* Findings of Fact and Conclusions of Law, pp. 11, ¶ 46. Certain proceeds held in trust by the Deermans' attorneys in the amount of $160,039.91 were used to pay a portion of the settlement amount. *Id.* The remaining balance in the amount of $1,339,960.00[30] due under the terms of the Compromise and Settlement Agreement was paid from the sale of certain real property owned by Fletcher Farms. *Id.,* ¶ 47. The Arbitrator awarded $669,980.04, one-half of the amount paid to Capital Farm Credit from the sale of Fletcher Farms's property, as a contribution claim. *See* Arbitration Award, p.3, ¶ 1(c). The Arbitration Award provides that any amounts recovered under the contribution award shall be credited against the $1,130,073.40. *Id.*

It is not possible for the Court to determine from the Arbitration Award what portion of the $901,000.00 is non-dischargeable. While the Arbitrator's factual findings reflect that Capital Farm Credit filed a proof of claim in the Deermans' bankruptcy case in the amount of $1,828.427.87[31], the factual findings do not set forth the components of Capital Farm Credit's claim. Further, the Arbitrator made no findings regarding what portion of the $1,500,000 the Fletchers paid to Capital Farm Credit was or should have been applied to the $901,000. It is possible that Capital Farm Credit discounted the $901,000 as part of the settlement. Thus, the Court cannot ascertain from the Arbitrator's factual findings what portion of the $1,500,000.00 settlement amount is attributable to the $901,000 that the Plaintiffs paid. Further evidence is required to establish the amount of the non-dischargeable debt attributable to the $901,000.00 in

[30]The Findings of Fact reflect that the remaining balance is $1,339, 960.00; however, $1,500,000.00 less the $160,039.91 applied from the proceeds in the Deermans' attorneys' trust account leaves an actual balance of $1,339,960.09. This discrepancy is immaterial and hardly worth noting.
[31]The Arbitrator's Findings of Fact and Conclusions of law include a finding that Capital Farm Credit filed a proof of claim in the Deermans' bankruptcy case in the amount of $1,828,427.87, of which all but $1,000.00 is unsecured, and that the Deermans have filed an objection to the claim, asserting that in the event Capital Farm Credit holds a valid claim, it should be reduced by the $1,500,000.00 to be paid under the compromise and settlement agreement. *See* Findings of Fact and Conclusions of Law, p. 12, ¶ 46.

increased liability caused by the Deermans' fraudulent misrepresentations, including the impact, if any, of the contribution claim awarded in paragraph (c) of the Arbitration Award.

CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs are entitled to partial summary judgment on their non-dischargeability claims under 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6) based on the preclusive effect of the Arbitration Award. Cody Farms is entitled to a non-dischargeable judgment in the amount of $389,709.61, including pre-judgment interest in the amount of $135,419.94, as a derivative claim on behalf of Falcon Farms based on its claims under 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6) arising from the Deermans' misappropriation and diversion of the assets and funds of Falcon Farms. Cody Farms is also entitled to a non-dischargeable judgment in the amount of $43,297.20 based on its fraud claim under 11 U.S.C. § 523(a)(2)(A).

The Fletchers are entitled to a determination of liability on their claim for fraud under 11 U.S.C. § 523(a)(2)(A). However, further evidence is needed with respect to the damages amount attributable to the Fletchers' fraud claim. The Court will enter a separate judgment consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: October 24, 2012

COPY TO:

Christopher M Gatton
Denise J. Trujillo
Law Office of George Dave Giddens, PC
Attorneys for Defendants
10400 Academy Rd., #350
Albuquerque, NM 87111

Brian Imbornoni
Jennings, Strouss & Salmon, P.L.C.
Attorney for Plaintiffs
201 E. Washington, Street, Suite 1100
Phoenix, AZ 85004-2385

43